**GELLATLY v. UNITED STATES.**

Cong. No. 17847.

Court of Claims.

May 5, 1947.

Stanley Suydam, of Washington, D. C. (Russell Hardy and Elwood Seal, both of Washington, D. C., on the brief), for plaintiff.

Grover C. Sherrod, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and JONES, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Judge.

This case involves what is known as the John Gellatly Art Collection now in the possession of and on display in the National Gallery of Art of the Smithsonian Institution. It is valued at approximately $4,000,000. The Administratrix of the Estate of John Gellatly, deceased, attacks the validity of the tranfer, claims to be the owner and asks for the value of the collection at the time of the alleged taking. By House Resolution we are directed to ascertain the facts and report to the Congress.

It appears from the findings of fact, which the court has made, that, with the exception of the three items listed in Appendix D, the transfer, gift or donation was complete prior to the marriage of Charlayne Whiteley Plummer and John Gellatly on September 24, 1930, and prior to their formal engagement as evidenced by the letter of September 2, 1930, which is set out in finding 11.

The proceedings by which the collection came into the hands of the National Gallery of Art were as regular and routine as the peculiar circumstances of the case would permit. The collection was first offered as a conditional gift to Columbia University in July 1928. These conditions not having been met by the University the offer was withdrawn March 26, 1929. Prior to the withdrawal of the offer to Columbia University Mr. Gellatly had discussed with the Chairman of the National Gallery of Art Commission the matter of offering the collection to the nation. After oral discussions John Gellatly, in a formal letter dated March 27, 1929, offered the collection, then on display in the Hecksher Building in New York City, as a gift to the National Gallery of Art on condition that certain items of expense incident to its care and preservation be met. These expenses were approximately $17,000 a year for the balance of the five-year lease period on the Hecksher Building which had about four more years to run.

On April 3, 1929, the Chairman of the National Gallery of Art Commission transmitted the offer to the Secretary of the Smithsonian Institution. The Permanent Committee of the Board of Regents passed a favorable resolution as did the National Gallery of Art Commission. On May 7, 1929, the Board of Regents of the Smithsonian Institution on recommendation of the Commission approved in principle the acceptance of the offer.

On June 5, 1929, the President approved Senate Joint Resolution No. 34. The reso-

lution contained the following provision: That the Smithsonian Institution is requested to convey suitable acknowedgment to the donor, and is authorized to include in its estimates of appropriations such sums as may be needful for the preservation and maintenance of the collection.

On June 13, 1929, John Gellatly signed a formal document of transfer of the art collection to the Smithsonian Institution. On August 13, 1930 Mr. Gellatly authorized the curator to furnish the Secretary of the Smithsonian Institution a supplementary list of art objects which he desired to include in the collection. This list is set out in the findings as Appendix B. While the items of this list were not included in the original document of transfer, all the evidence, both documentary and otherwise, indicates a full intention on the part of Mr. Gellatly to add them to the collection and transfer them to the Smithsonian Institution.

The Congress in an act approved March 26, 1930, and in subsequent acts appropriated the funds necessary to meet the conditions of the transfer of the art collection.

On September 2, 1930, Mr. Gellatly wrote Mrs. Charlayne Whiteley Plummer an offer of marriage. Mrs. Plummer was a widow with an invalid daughter. He had been acquainted with her some five years. They were married on September 24, 1930.

On October 24, 1930, Mrs. Gellatly called upon the Secretary of the Smithsonian Institution stating that she had recently married M. Gellatly; that she was surprised after her marriage to him to find that he had divested himself of his whole collection—almost his whole fortune—and that she believed the Secretary of the Smithsonian Institution might be able to help her get back the second gift of August 1930. The matter was referred to the Board of Regents which conducted an investigation, heard representatives of the Smithsonian Institution and considered the various documents bearing on the case. Mrs. Gellatly requested that she be given a hearing by the Board of Regents, but although she stayed in Washington several days for this purpose, she was never given

an opportunity to present her case to the Board. She repeatedly renewed her request. The Board of Regents did consider a letter and written statement prepared by Mrs. Gellatly. We think the Board would have acted more wisely had they given her a personal hearing but this was not done.

After considerable discussion, and some writing of letters, the Board of Regents finally determined that the transfer or gift had been completed prior to the marriage and that the Gellatly estate therefore had no further interest in the art collection.

Three items were added to the collection by Mr. Gellatly on May 11, 1931.

Mr. Gellatly died in New York City on November 8, 1931. His remains were brought to Washington and buried in the Congressional Cemetery. Mrs. Gellatly borrowed the money from her sister to pay the burial expenses.

Mrs. Gellatly petitioned the Surrogate's Court of New York County for administration of the estate. In the course of the proceedings a will executed by Mr. Gellatly on August 22, 1930, was presented. By the terms of this will the decedent's entire estate was left to the Smithsonian Institution to be used for the benefit of the Gellatly Collection. The will was declared void by the Surrogate's Court and Mrs. Gellatly was appointed administratrix on February 2, 1932. The estate was found to consist of personal articles of Mr. Gellatly's of small value. In connection with the administration of the estate discovery proceedings were started and an attempt was made to secure possession of the collection then housed in the Hecksher Building. Also in connection with the administration of the estate the United States Government filed a claim for approximately $7,522 Federal income tax. The State of New York also filed a tax claim for a smaller amount.

Upon the termination of the lease in the Hecksher Building which expired on Sunday, April 30, 1933, Mr. Seymour, the curator, with the assistance of help sent from Washington, packed the collection which was moved to Washington and placed in the Natural History Building of the Smith-

sonian Institution and is now under the direct supervision of the Director of the National Collection of Fine Arts, which in 1933 was a bureau in the Smithsonian Institution known as the National Gallery of Art.

Various bills were introduced in the Congress over a period of years having for their purpose the granting of relief to Charlayne Whiteley Gellatly, either by the United States District Court of New York, or the United States Court of Claims. Some of the bills were reported favorably and some unfavorably by the respective Congressional committees, but none of the bills was finally passed by the Congress. The resolution referring one of the bills to this court was adopted on April 18, 1944.

The question is whether Charlayne Gellatly, as administratrix of the estate of John Gellatly, deceased, is legally or equitably entitled to relief.

Whether the transaction be construed as a gift, a transfer or an assignment, it was in either event complete and binding. It was never repudiated by John Gellatly, but on the other hand expressly confirmed by him. There is no basis in law or in equity to set aside the gift or transfer and no basis in law or equity to allow a recovery in behalf of the Gellatly estate.

The three items set out in Appendix D, to wit, an oil painting, a water color and an ancient glass bottle, were secured and added to the collection after the marriage. Mrs. Gellatly would be entitled to whatever interest the New York law gives her in property such as these items which were procured and transferred after the marriage. The two pictures cost $50 each, and the glass bottle was acquired in an exchange of other articles at an agreed exchange value of $650.

However, this claim is in behalf of the Gellatly estate, against which the Government has a claim for delinquent taxes in the sum of $7,522, which is far more than enough to absorb any possible value of the three articles.

There are some strange and unusual facts connected with this case. At the time Mrs. Plummer became acquainted with Mr. Gellatly he was a man of wealth. He owned valuable Fifth Avenue property, including a home which was later sold for $1,000,000. He also had a valuable art collection. At the time of his death he had practically nothing except some small articles, including an umbrella and a suit case. Prior to the marriage he sold his home for $1,000,000 and also sold other valuable New York properties and apparently invested the proceeds in art treasures which were transferred to the Smithsonian Institution. These dispositions of property and transfers were all made after 1928.

Mrs. Gellatly is the mother of an invalid daughter. She knew at the time of her acquaintance with Mr. Gellatly that he was a man of means, and she frankly admits that she had thought the marriage would give some assurance of being able to care for the needs of her daughter. She evidently knew and relied upon the considerable value of the prospective husband's property holdings and was not advised in any way until after the marriage that it was practically all being disposed of.

At the time of his death the only property of any substantial value which Mr. Gellatly possessed was an annuity of $3,700 which ended with his death.

Mrs. Gellatly did not know prior to the marriage of the transfer of Mr. Gellatly's property. He had not told her. In fact, the documentary and other evidence indicates that he permitted her to believe that he was a man of means. The problems of life are complicated by the lack of frankness on the part of people who deal with each other. Apparently the realm of matrimony is no exception to this rule.

There can be no doubt that Mr. Gellatly fully intended to and did transfer the art objects to the Smithsonian Institution. That he led his wife to believe he intended to make provision for her maintenance is equally clear. He did not do so and against him she had a just cause of complaint. On the other hand, the representatives of the Smithsonian Institution met their commitments in full.

Apparently Mr. Gellatly was somewhat eccentric. He wore white velvet trousers and a red velvet coat, and gave much attention to his appearance. The evidence indicates that he was anxious to dispose of his property and put the proceeds into the art collection and have this displayed as a unit collection by the Smithsonian Institution. He had a great pride in his art collection. He wanted it displayed with his name attached. Just why a man 77 years of age would take these steps without disclosing them to his prospective wife is not shown by the testimony.

At the time of her marriage Mrs. Gellatly gave up a gainful occupation, and through the years had been largely dependent upon relatives for her support.

Whether any sum should be appropriated directly for Mrs. Gellatly by way of a gift, grant or donation to her in the circumstances is a matter for the determination of the Congress. Certainly the Gellatly estate has no claim either legal or equitable against the Government, since the National Gallery of Art and the Smithsonian Institution have lived up to their agreement with Mr. Gellatly in every way.

It is ordered that the special findings of fact, conclusion of law, and the foregoing opinion of the court be transmitted to the House of Representatives, in accordance with the act of March 3, 1911, 36 Stat. 1087, 1138, Sec. 151 of the Judicial Code, Sec. 257, Title 28 of the United States Code, 28 U.S.C.A. § 257, amending the act of March 3, 1887, 24 Stat. 505, 507.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case